MILTON R. WESSELL ET AL., APPELLEES, v. MANDEVILLE
HAVENS ET AL., APPELLANTS.

FILED MAY 13, 1912. No. 17,023.

1. Contracts: CONSTRUCTION: SALES: GOOD-WILL. In a duly-executed.
formal, written contract containing the terms under which a
stock of general merchandise is sold, a provision that the good-
will of the seller's mercantile business is included in the sale
does not imply an agreement that the seller shall not re-engage
in such business.

2. Evidence: PAROL EVIDENCE: ADMISSIBILITY. Where the good-will
of a mercantile business is included in a duly-executed, formal,
written contract of sale, without any restriction on the right of
the seller to re-engage in the same business, oral evidence that
he agreed not to do so is inadmissible as varying the terms of
the written instrument.

APPEAL from the district court for Otoe county:
HARVEY D. TRAVIS, JUDGE. *Reversed with directions.*

*J. C. Cook, John C. Watson* and *A. P. Moran,* for ap-
pellants.

*Pitzer & Hayward, Edwin Zimmerer* and *H. C. May-
nard, contra.*

ROSE, J.

Plaintiffs bought a stock of general merchandise and
the good-will of the owners in an established mercantile
business. This is an action to recover damages from the
sellers for subsequently engaging in the same business as
competitors of the buyers in alleged violation of the con-
tract of sale. From a judgment in favor of plaintiffs for
$9,000, defendants have appealed.

Defendants owned and conducted a general store at
Fremont. By written contract dated March 6, 1906, they
agreed to sell their entire stock and the good-will of their
business to plaintiffs. The agreement provided that an

invoice of the stock should be made by the parties as soon as possible; that the purchase price should be the amount of the invoice, after deducting 5 per cent. of the total; that plaintiffs should pay the consideration upon completion of the inventory; that for $150 a month for two years, with an option for two years more, defendants should lease to plaintiffs the rooms in which the mercantile business was being conducted; and that the good-will of the sellers should be included in the sale of the stock. After a satisfactory inventory had been made by both parties, plaintiffs paid the stipulated consideration and accepted from defendants a duly-executed, formal, written bill of sale, containing the following terms:

"Know all men by these presents: That I, M. Havens and Laura Havens, of the county of Dodge, state of Nebraska, of the first part, for and in consideration of the sum of $29,276.45, to me in hand paid by Wessel, Kohn & Co., of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, their executors, administrators, and assigns the entire stock of dry goods, millinery and ready-made goods and all articles of merchandise of whatsoever kind contained in my present place of business located on lots 3 and 4, block 143, in the city of Fremont. Goods sold are contained in the two-story and basement of said building, including all the store-fixtures of whatever kind. This to include also the good-will of the parties of the first part to go with the business belonging to me, and now in my possession, at the place last aforesaid."

The storerooms were leased according to contract. Plaintiffs took immediate possession of the leased premises and the purchased stock, and conducted a mercantile business at the same place until October, 1907, when they sold the remaining stock in bulk and retired. In the meantime defendant Mandeville Havens erected in the neighborhood of plaintiffs' store a new building, and defendant Laura L. Havens, his wife, opened therein, December 13,

1906, a suit store with an investment of $3,800. Both enterprises were carried on harmoniously without interruption until plaintiffs retired from the mercantile business in Fremont. During that time plaintiffs did not complain that defendants, by opening and conducting a suit house, had violated their agreement, nor did plaintiffs present or mention a claim for damages for breach of the contract of sale, and friendly relations existed between plaintiffs and defendants. After plaintiffs sold their stock they sent from Nebraska City to defendants at Fremont $150 to pay a month's rent for the storerooms which they had surrendered to their successors. Defendant Mandeville Havens went to Nebraska City, May 27, 1908, to make a further collection of rent, and was served with a summons in this case. Two days later a summons was served on his wife in Dodge county.

The original contract and the bill of sale are both pleaded in the petition. The agreements were executed. Under them defendants parted with their stock of merchandise and plaintiffs took possession of it. There was no dispute about the meaning of any term employed by the parties to express their agreements, or about any oral promise, until plaintiffs had resold all the property purchased. There is no allegation of fraud on the part of defendants in making the sale, or in formulating or executing the contracts. The contracts, though attached to the petition, do not contain a stipulation restricting defendants' right to re-engage in the mercantile business in Fremont while plaintiffs are engaged therein. Plaintiffs understood this, and pleaded: As a material consideration for the purchase and for the payment of the agreed price, defendants at the time orally promised and agreed not to engage in such business as competitors of plaintiffs, "which said promise and agreement all the parties to said transaction understood to be embraced in the sale of the good-will as embodied and set out in the said bill of sale." By plaintiffs' pleadings and the proofs adduced to support them, it is shown that the judgment

rests on the breach of an oral promise by defendants not to re-engage in the mercantile business, and on a parol understanding that such a promise was embraced in or implied from the following language of the bill of sale: "This to include also the good-will of the parties of the first part to go with the business." The evidence shows, without contradiction, that the sentence quoted was inserted by an attorney mutually selected by the parties after the discussion of a proposed stipulation binding defendants not to re-enter business as a competitor of plaintiffs, and after the sellers had refused to make such an agreement a part of the written instrument. The care and detail with which the contracts are drawn and the importance of a transaction requiring the payment of $29,000 and the transfer of a stock of goods valued at that sum evince an intention of the parties to leave no material matter to oral controversy. Plaintiffs themselves asserted no right resting in parol until after they had conducted the store a year and a half and had sold all the property purchased.

On a record presenting the situation outlined, two well-established rules of law defeat plaintiffs' case: (1) In a duly-executed, formal, written contract containing the terms under which a stock of general merchandise is sold, a provision that the good-will of the seller's mercantile business is included in the sale does not imply an agreement that the seller shall not re-engage in such business. (2) Where the good-will of a mercantile business is included in a duly-executed, formal, written contract of sale, without any restriction on the right of the seller to re-engage in the same business, oral evidence that he agreed not to do so is inadmissible as varying the terms of the written instrument. *Zanturjian v. Boornazian,* 25 R. I. 151, 55 Atl. 199; *Bassett v. Percival,* 5 Allen (Mass.) 345; *Costello v. Eddy,* 12 N. Y. Supp. 236; *Hoxie v. Chaney,* 143 Mass. 592; *Love v. Hamel,* 59 App. Div. (N. Y.) 360; *Cottrell v. Babcock Printing Press Mfg. Co.,* 54 Conn. 122. These principles apply to the present case, and they leave plaintiffs without any breach of con-

tract and without any competent evidence to justify a recovery.

The judgment is therefore reversed and the cause remanded to the district court, with directions to dismiss the action.

REVERSED.

LETTON, J., not sitting.

REESE, C. J., and HAMER, J., agree to the reversal, but not to the order requiring a dismissal of the case.