Argued at Pendleton November 2, reversed and decree entered December 13, 1921, rehearing denied March 14, objections to cost bill overruled March 14, petition to recall mandate denied April 27, 1922.

## COKER AND BELLAMY, PARTNERS UNDER THE NAME OF EASTERN OREGON MUSIC COMPANY *v.* RICHEY.

(202 Pac. 551; 204 Pac. 945; 204 Pac. 947.)

**Goodwill—Covenant not to Engage in Like Business not Transferable by Buyer.**

1. Where plaintiff bought out defendant's music business, and a contract was made whereby defendant agreed not to engage in a like business in the county, such covenant did not run with the business of dealing in personal property, and was not transferable.

**Pleading—Defects of Statement in Complaint Cured by Answer.**

2. In an action for defendant's breach of contract not to engage in the same kind of business as he sold, in which the complaint charged defendant with violating such covenant, without

alleging plaintiff's performance of the terms of the contract, defendant's answer, setting up the contract in full, cured any defective statement of the cause of action.

**Evidence—Goods Arriving in the Future not Included in Sale of Goods "Now" Located in Store Building.**

3. In an action for breach of contract not to engage in business similar to that sold by defendant, the recited consideration being "one dollar and other valuable consideration" for the property "'now' located in the New Foley Building," such contract could not be enlarged to include a carload of pianos to arrive in the future.

**Contracts—Contract not to Engage in Business at Certain Place is Valid.**

4. A contract that one of the parties who sells the goodwill of a business shall not engage in like business in a certain place is valid.

## ON PETITION FOR REHEARING.

**Evidence—Only Consideration of Written Contract Subject to Explanation is a Monetary One.**

5. The consideration for a written contract which is subject to explanation is a monetary and not a contractual one.

**Goodwill—Agreement not to Engage in Business is Transferable With Business and Goodwill.**

6. An agreement made in connection with a sale of a business, not to engage in similar business in that city, though it is not an agreement which runs with the business, and cannot be enforced by the buyers of any or all of the goods sold with the business, is one which can be transferred by the buyer of the business in connection with a resale by him of the business and the goodwill.

**Goodwill — Complaint Held not to Allege Assignment of Interest in Business Connected With Agreement not to Compete.**

7. A complaint alleging that after plaintiff, who had theretofore been engaged in the music business, had purchased defendant's stock and business in connection with which defendant agreed to refrain from engaging in competing business, with buyer transferred an undivided half interest in his music business to his coplaintiff, does not establish that he assigned an interest in the business and goodwill he purchased from defendant, and therefore

---

4. On sale of business and goodwill as a limitation upon vendor's right to engage in competing business, see notes in 21 **Ann. Cas.** 427; Ann. Cas. 1914B, 587; 19 **L. R. A.** (N. S.) 762; L. R. A. 1918F, 1179.

6. For authorities discussing the question of enforceability by the purchaser of a business of a covenant of a third person with his vendor not to engage in a similar business, see note in 4 **A. L. R.** 1078.

does not show that coplaintiff has any right to enforce the contract to refrain from competing.

## ON OBJECTIONS TO COST BILL.

**Costs—Verification of Statement Held Sufficient.**

8. A verification of the statement of appellant's costs and disbursements by his attorney, which stated that, except for the fees of officers, the disbursements therein above set forth were necessarily incurred by the appellant, who was entitled to recover them from the respondent, is sufficient in form, in view of Section 569, Or. L., entitling a party to a disbursement, whether the same has been paid or not by him.

**Appeal and Error—Judgment for Costs Against Plaintiff Supports an Appeal After Selling Subject Matter.**

9. Where an injunction was denied, and the costs of suit were taxed against plaintiff, the latter has an interest in the judgment sufficient to support an appeal therefrom, though he has since sold the business in connection with which defendant made the promise not to engage in competing business.

**Appeal and Error—Objection That Appellant had Transferred His Interest Should have Been Suggested Before or at Hearing.**

10. The objection that appellant had lost an interest in the decree sufficient to support an appeal therefrom by a subsequent sale of the subject matter of a suit should have been suggested by respondent before, or at least at the time, the cause came on for hearing in the Supreme Court.

From Union: GILBERT W. PHELPS, Judge.

In Banc.

REVERSED AND DECREE ENTERED.

For appellants there was a brief over the name of *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. George T. Cochran* and *Mr. Colon R. Eberhard.*

For respondents there was a brief over the names of *Messrs. Ivanhoe & Ringo,* with oral arguments by *Mr. F. S. Ivanhoe* and *Mr. Ernest R. Ringo.*

BURNETT, C. J.—The plaintiffs Coker and Bellamy aver that they are and have been since May 22, 1920, partners under the firm name of "Eastern Oregon Music Company," and that they have filed

the certificate required by law, with the county clerk of Union County, Oregon. The complaint avers that the defendant Richey was carrying on a general retail music business at La Grande, Oregon, selling pianos, piano-players, phonographs and other musical instruments, and that:

"On January 15, 1920, for a valuable consideration, the said defendant sold and delivered to this plaintiff, R. H. Coker, all the pianos, piano-players, phonographs, piano-player records, phonograph records, music, equipment, office fixtures, shelving, furniture, stock and goodwill of that certain music and piano business then owned and controlled by said G. M. Richey (Richey Piano House) then located in the New Foley building, La Grande, Oregon, save and except only one office desk, and that, as a part of the consideration of said transfer and sale of said business of defendant, known as Richey Piano House, including goodwill, to plaintiff R. H. Coker, defendant G. M. Richey contracted and agreed not to enter into the piano or music business in any way, shape or form, actively, for himself or otherwise, in La Grande, Union County, Oregon."

The complaint further avers in substance that in consideration of said covenants and agreements of the defendant, the plaintiff Coker purchased said business, goodwill and stock of the defendant, and that ever since January 15, 1920, the plaintiffs as successors in interest of said business and rights, have been engaged in the said retail music business, including the sale of pianos and musical instruments, and are now so engaged, at La Grande, Oregon. They then accuse the defendant of violating his covenant not to engage in the piano or music business at La Grande, specifying with considerable particularity the various instances which they aver constitute a breach of that covenant.

In his answer the defendant admits that about January 15, 1920, the defendant entered into an agreement with Coker concerning the sale to Coker by the defendant of certain property then owned by the latter, and certain matters connected therewith, but denies all the other allegations of the amended complaint except as stated in the answer. Affirmatively, the answer avers that the defendant for many years prior to January 15, 1920, was engaged in the general retail music business at La Grande, Oregon, including the sale of pianos, under the name of "Richey Piano House," and that prior to January 15th he and Coker entered into negotiations for the transfer of said business, including the stock of goods then on hand owned by and in the possession of the defendant, and that Coker and the defendant then and there arrived at an agreement upon which defendant would sell and dispose of said business and property to the plaintiff, upon and for the consideration said plaintiff then and there agreed to pay defendant therefor. Continuing, the defendant says that:

"The consideration then and there agreed to be paid by said plaintiff to defendant for said property and business was,—

"(a) The payment to defendant in cash upon delivery the invoice and agreed value of the personal property described in a certain written agreement made and entered into between plaintiff and defendant on or about the fifteenth day of January, 1920, a true copy of the whole of said agreement being hereunto attached and marked Exhibit 'A,' and made a part of this answer. * * *"

Exhibit "A" referred to is here set out:

"Contract and Agreement.

"This contract and agreement made and entered into this 15th day of January, 1920, by and between

R. H. Coker (Eastern Oregon Music Company) of La Grande, Oregon, and G. M. Richey (Richey Piano House) of La Grande, Oregon,

"Witnesseth: That for and in consideration of one dollar and other valuable considerations, receipt of which is hereby acknowledged by said G. M. Richey, said G. M. Richey (Richey Piano House) sells and delivers to said R. H. Coker (Eastern Oregon Music Company) all the pianos, piano-players, phonographs, piano-player records, phonograph records, music, equipment, office fixtures, shelving, furniture, stock and goodwill of that certain music and piano business now owned and controlled by said G. M. Richey (Richey Piano House) now located in the New Foley building, La Grande, Oregon, save and except only one office desk, and the said Richey (Richey Piano House) hereby conveys and delivers same to said R. H. Coker (Eastern Oregon Music Company), and covenants with said Coker that same is free and clear of all incumbrances.

"And said G. M. Richey hereby contracts and agrees not to enter the piano or music business in any way, shape or form, actively, for himself or otherwise, in La Grande, Union County, Oregon.

"Executed in triplicate this 15th day of January, 1920.

"(Signed) G. M. RICHEY.
"(Signed) R. H. COKER."

This was executed in the presence of two subscribing witnesses.

As further elements of the consideration, the answer states in substance that the plaintiff was to receive and pay in cash the inventoried cost and freight charges on all pianos and other musical goods then ordered and not yet received by the defendant that the latter should desire or ask plaintiff to receive; that the plaintiff would pay to the defendant one half the profit on all goods not included in the sale to the plaintiff, on sales made by the defendant

while closing up his business; and that the defendant was to have the right to receive and resell all goods of every description commonly known as "reverts," that had been previously disposed of by the defendant under contract or otherwise. He also says that on his part he was entitled to complete all business of every nature in his line as a piano and music dealer that he had already commenced, either by negotiation, solicitation or incomplete contracts or agreements, concerning sales or business, or prospects for sales of every nature. He contends that the plaintiff Coker violated his agreement as stated in the answer, in sundry ways, among others that after making the sale the defendant received a carload of pianos, on which the plaintiff, as part of the consideration of the sale and transfer of the business, had contracted to pay the actual cost and freight paid by the defendant.

The reply admits the execution of the contract set out as exhibit "A" but otherwise traverses the affirmative matter of the answer.

The trial court made findings of fact and conclusions of law in favor of the defendant and dismissed the suit, from which ruling the plaintiffs appeal.

1. As a preliminary matter, it is objected that the plaintiff Bellamy has no right to rely upon the covenant made by the defendant with the plaintiff Coker, not to engage in business. Such a covenant does not run with the business of dealing in personal property like covenants run with the title to realty. So long as Coker remains in business, he will have a right to enforce the covenant, but he cannot transfer that privilege to Bellamy. The decree was right in dismissing the suit so far as it applied to the plaintiff Bellamy.

2. The defendant further objects to the complaint in that it does not expressly state that the plaintiff Coker had performed all the terms of the contract. It does not appear by the complaint, however, that anything was to be performed by Coker more than had been done by him. In other words, so far as the complaint was concerned, it does not appear that the contract was not fully executed on his part. No objection was urged against the complaint by demurrer. As this stage of the proceedings, at the worst, it may be classed as a defective statement of a good cause of suit, which it is obvious is cured by the answer, pleading the contract in full. That document recites that for and in consideration of one dollar and other valuable consideration, "receipt of which is hereby acknowledged" by Richey, the latter contracts not to enter the piano or music business in any way, actively, for himself or otherwise, at La Grande. This plainly means that Coker had performed his part of the contract, because the receipt of the consideration is acknowledged by Richey. The agreement states that Richey sells and delivers to Coker, which would indicate completion on the part of Richey. If the recitals of the contract are to be believed, there was nothing left for Coker to do on his part. In other words, the answer states an executed agreement in writing leaving nothing to be done or omitted by either party except the covenant of Richey not to enter into the piano or music business at La Grande. Taking the complaint and answer together, it appears as a matter of pleading that Coker did everything he was required to do, because the written contract signed by Richey acknowledges receipt of the "other valuable considerations."

3. The written agreement signed by the parties must govern them, unless the defendant may explain the term "other valuable considerations" by enlarging the contract, as he essays to do by his answer, so as to include certain executory covenants to be observed by Coker. In effect, the effort of the defendant is to interpolate into the written agreement other things which he claims are part of the consideration. No attack is made upon the contract by way of fraud or in an effort to reform it as for a mistake. That the contract cannot be enlarged in the manner delineated in the answer is settled by such cases as *Leavitt* v. *Dimmick,* 86 Or. 278 (168 Pac. 292); *Sund* v. *Flagg & Standifer Co.,* 86 Or. 289 (168 Pac. 300); *Feenaughty* v. *Beall,* 91 Or. 654 (178 Pac. 600); *Duncan Lumber Co.* v. *Willapa Lumber Co.,* 93 Or. 386 (182 Pac. 172, 183 Pac. 476); *O'Neill* v. *Twohy Bros.,* 98 Or. 481 (190 Pac. 306); and *Marks* v. *Twohy Bros.,* 98 Or. 574 (194 Pac. 675). There is a class of cases dependent upon and within the terms of Section 713, Or. L., declaring that:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing," etc.

There are other cases which allow parol proof of that part of the contract which lies in parol although another part may be in writing. Discussing this matter, Mr. Justice HARRIS in *Sund* v. *Flagg & Standifer Co., supra,* said:

"It is a nearer approach to accuracy to say that if by proper and competent means it is made to appear that a writing contains only a part of the agree-

ment entered into, parol evidence may be received to prove the entire contract; but if the writing contains all that is necessary to constitute a contract and purports to be a complete expression of the whole agreement, it is presumed that the parties have introduced into it every material item and term, and parol evidence is not admissible to add another term to the agreement, although the writing does not mention the particular item to which the parol evidence is directed. * *

"Obviously, the mere fact that the parties did in truth agree upon an additional term not found in the writing, is not of itself enough to open the door for extrinsic evidence, for if such were the doctrine but little would remain of the rule against varying written contracts by parol."

The principle is thus succinctly stated in 22 C. J. 1290:

"The parts of the agreement proposed to be proved by parol must not be inconsistent with, or repugnant to, the intention of the parties as shown by the written instrument; for, to receive parol proof of a part not reduced to writing, which is directly repugnant to the intention of the parties as expressed in the written instrument, would contravene the rule that parol evidence cannot be received to contradict or vary the terms of a written agreement."

Applying this precept by way of illustration to the contract in hand, we note that the property which is the subject of sale is described as "now located in the New Foley building, La Grande, Oregon." This cannot be enlarged by mere construction or inquiry into the consideration, in the absence of fraud or mistake, to include a carload of pianos to arrive in the future. That carload of pianos coming afterwards was not located in the New Foley building when the "now" of the contract was written and signed by the parties. To include them by parol,

would be repugnant to the contract within the meaning of the precedents cited. The plaintiff's refusal to receive them seems to be the principal grievance of the defendant.

According to the statements of the pleadings, the written contract was the culmination of previous negotiations and must under the terms of our Code be considered as containing its terms. Consequently, by neither averment nor testimony can there be anything considered as to the terms of the agreement aside from the contents of the writing, with certain exceptions not here involved. If the defendant would have avoided the effect of this principle, he should have pleaded a mistake or fraud inducing him to enter into the contract and based his defense on either reformation or annulment of the covenant; but no attempt of the kind is disclosed by the record.

4. That it is competent to contract that one of the parties who sells the goodwill of a business shall not engage in like business in a certain place, is abundantly established by the authorities. The precedents are examined in *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211, L. R. A. 1915A, 679), and *Feenaughty* v. *Beall, supra.* In the latter case, while the principle was recognized it was not applied, because the language of the contract was not sufficiently definite. The terms of the covenant here in question on that subject are complete and definite, so that there can be no misunderstanding about its scope. If the defendant would engage in the piano or music business, he must do it elsewhere than at La Grande while that contract is in force.

The decree of the Circuit Court is reversed and one here entered enjoining the defendant from carrying on the piano or music business in any way, shape or

form, actively, for himself or otherwise, at La
Grande, Union County, Oregon. The plaintiff Coker
will recover the costs and disbursements of this
litigation. No costs or disbursements will be allowed
in favor of either of the other parties.

REVERSED AND DECREE ENTERED.

---

Rehearing denied March 14, 1922.

ON PETITION FOR REHEARING.

(204 Pac. 945.)

*Messrs. Cochran & Eberhard,* for the petition.

*Messrs. Ivanhoe & Ringo,* for the cross-petitioners.

In Banc.

BURNETT, C. J.—The defendant petitioned for a
rehearing of this cause and in support thereof re-
argues the same question involved in the principal
part of the discussion in the opinion already rendered.

5. Reduced to its lowest terms, the effort of the
defendant is to construct a contract entirely different
in its terms and obligations from that expressed in
the writing which both parties admit they signed.
All this is attempted under the disguise of explain-
ing the consideration. It is so thoroughly settled
that the consideration subject to explanation is a
monetary and not a contractual one, that it is un-
necessary to enter into an extended re-examination of
that matter. It may be remarked that while the
contract calls for a sale of "all the pianos, piano-
players," etc., the effort of the answer is to contradict

the plain statement of, "all the pianos," and to interpose exceptions to that language. For instance, the answer says, in so-called explanation of the consideration:

"That · said plaintiff would receive and pay to defendant in cash the actual inventory cost, with freight charges on all pianos and other musical goods then ordered and not yet received by defendant *that defendant should desire or ask plaintiff to receive*"; and further:

"That defendant was to have the right to receive and resell all goods of every description commonly known as reverts, that had been previously disposed of by defendant."

All of this outlines the position of the defendant in his answer to be that not all of the goods were sold, but only such as he himself should desire to sell. If such efforts are to be countenanced, it would be child's play to reduce a contract to writing, and would operate as a virtual repeal of Section 713, Or. L.

The plaintiff Bellamy attacks the opinion in the feature contained in this excerpt:

"As a preliminary matter, it is objected that the plaintiff Bellamy has no right to rely upon the covenant made by the defendant with the plaintiff Coker, not to engage in business. Such a covenant does not run with the business of dealing in personal property like covenants run with the title to realty. So long as Coker remains in business, he will have a right to enforce the covenant, but he cannot transfer that privilege to Bellamy. The decree was right in dismissing the suit so far as it applied to the plaintiff Bellamy."

6. While the case of *Hillman* v. *Shanahan*, 4 Or. 161 (18 Am. Rep. 281), has been so applied as to support the declaration in this paragraph that Coker

could not transfer the covenant to Bellamy, and while it is true that the covenant in question does not run with the physical property as covenants of warranty run with land but is only appurtenant to and protective of the business and goodwill included in the contract, by the great weight of precedent the true rule is that such a covenant is assignable with a subsequent sale of the business and goodwill by the original vendee and that it will pass to the new purchaser as an incident of the latter sale. In brief, the covenant does not run with the tangible chattels kept for sale so that each buyer, of all or any of them, would have a right to restrain the covenantor from again engaging in the business in La Grande. As said in *Francisco* v. *Smith,* 143 N. Y. 488, 493 (38 N. E. 980, 981):

"Such an agreement is a valuable right in connection with the business it was designed to protect, and going with the business it may be assigned, and the assignee may enforce it just as the assignor could have enforced it if he had retained the business. The agreement can have no independent existence or vitality aside from the business."

The whole subject is discussed in *Sickles* v. *Lauman,* 185 Iowa, 37 (169 N. W. 670), as reported in 4 A. L. R. 1073 and notes. It would be competent for a purchaser of a stock of goods together with the business and goodwill thereof to sell the goods without in any way transferring the title to the business and goodwill, so that he could continue in the same business in the same place. In order for Bellamy to maintain this suit, he must, as between himself and Coker, show privity of estate in, or title to, the business and goodwill thereof mentioned in the contract.

7. We will examine the complaint to see whether or not he is entitled to claim under the contract made between Coker and Richey. The amended complaint states:

"That on and prior to the fifteenth day of January, 1920, the plaintiff R. H. Coker was transacting a retail music business for gain and profit at La Grande, Union County, Oregon, under the name of Eastern Oregon Music Company, and ever since said date and up to the time of filing this amended complaint, and at the time of the filing of the complaint herein, has been and now is conducting said business at La Grande, Union County, Oregon, under said firm name and style of Eastern Oregon Music Company, except that on and since the twenty-second day of May, 1920, the plaintiff T. K. Bellamy has owned a one-half interest therein, and now, and since said date, plaintiffs have been partners in such business."

The true interpretation of this excerpt is, that until May 22, 1920, Coker was the Eastern Oregon Music Company, and the Eastern Oregon Music Company was Coker, and that he was conducting a business entirely distinct and separate from that business carried on by Richey. It is also plain from this excerpt from the complaint that it was the Coker business and none other, in which Bellamy became a partner. Further on in the complaint is described the business carried on by Richey "for many years prior to the fifteenth day of January, 1920, and it is said:

"That on said fifteenth day of January, 1920, for a valuable consideration, the said defendant sold and delivered to this plaintiff, R. H. Coker, all the pianos," etc.

The only subsequent phrase in any way intimating that Bellamy acquired any title to the Richey business is the further statement:

"That, in consideration of said covenants and agreements of said defendant, plaintiff Coker purchased said business, goodwill and stock of the defendant known as Richey Piano House, and ever since said fifteenth day of January, 1920, these plaintiffs, as successors in interest of said business and rights, have been engaged in the said retail music business," etc.

In the first place, to say that the plaintiffs have been engaged in the retail music business ever since January 15, 1920, is contradictory of the previous allegation of the complaint that Bellamy has owned a half interest therein since May 22, 1920. To say that the plaintiffs, "as successors in interest of said business and rights," have engaged in business, is but to state a conclusion. In other words, while Bellamy might assume to act as successor in interest, his right to do so is not disclosed by appropriate averment. In brief, while the complaint shows that Coker purchased the stock of musical instruments together with the business and goodwill of the Richey Music House, it does not appear in the complaint that he afterwards transferred any part of the same to Bellamy. So far as appears in the complaint, it would have been perfectly competent for Coker to take Bellamy as a partner in the original Coker business and to carry on for himself alone the original Richey business, or to close it up without further operation. The result is, that so far as Bellamy is concerned, he has shown no right or interest in the business and goodwill formerly owned by Richey and afterwards transferred to Coker. Hence there was no error in dismissing the suit as to Bellamy, but for reasons different from that inartificially assigned in the objectionable excerpt from the opinion already quoted.

We adhere to the result of the former opinion, and both petitions for rehearing are denied.

REHEARING DENIED.

---

Objections overruled March 14, 1922.

ON OBJECTIONS TO COST BILL.

(204 Pac. 947.)

*Messrs. Ivanhoe & Ringo,* for the motion.

*Messrs. Cochran & Eberhard, contra.*

PER CURIAM.—On appeal by the plaintiffs the decree of the Circuit Court was reversed and the plaintiff Coker was allowed the costs and disbursements of the litigation, but they were denied as to the other parties. The plaintiff Coker filed his cost bill, including items for the expense of transcript, filing fee, printing abstract, printing brief, trial fee, costs and expense of transcript of testimony. This statement of his costs and disbursements was verified as follows:

"State of Oregon,
County of Union,—ss.

"I, Colon R. Eberhard, being first duly sworn, say: I am one of appellants' attorneys in the above-entitled cause; and except fees of officers, the disbursements set forth above have been necessarily incurred by the appellant who is entitled to recover the same from the respondent."

This was signed and sworn to by the affiant attorney before a notary public.

The defendant made a uniform objection to each item. The first is a replica of all the rest, except as to the name of the item and the amount:

"Respondent objects to the allowance of the item of $1.50 designated 'Cost of Transcript' for the reason that said item was not paid or incurred by appellant Coker. Respondent also objects to said item for the reason that said cost bill is not properly verified in that it is not stated in said verification that appellant Coker paid or incurred the same or that *he* is entitled to recover the same. Respondent also objects to the allowance of said item for the reason that appellant Coker had disposed of all interest in the business of the Eastern Oregon Music Company and in this litigation prior to the date of the service of the notice of appeal herein."

8. The verification is in the exact form directly approved by this court in *Morris* v. *Rodgers,* 26 Or. 578 (38 Pac. 931), and *Cunningham* v. *Friendly,* 76 Or. 17 (147 Pac. 752), and must be held sufficient.

"A disbursement which a party is entitled to recover must be taxed whether the same has been paid or not by such party": Section 569, Or. L.

9. One of the consequences of the decree from which the appeal was taken was that the plaintiff Coker was cast in costs and disbursements, besides having his suit for injunction dismissed. From this decree he had a right to appeal, although he may have previously sold his stock of goods. He secured in this court a more favorable decree, in that the decree of the Circuit Court was reversed and he was allowed the costs and disbursements of the litigation. The decree of the Circuit Court against him for costs and disbursements prevents the litigation from involving a mere academic question which the defendant claims is the consequence of the sale of the stock of goods formerly owned by the plaintiff.

10. Moreover, if the matter had assumed that mere theoretical shape, that circumstance should have been suggested by the defendant before, or at least at the time, the cause came on for hearing in this court. The amount of each item is not otherwise questioned.

The objections to the cost bill are not well founded, and the costs and disbursements will be taxed according to the bill filed by the plaintiff Coker.

OBJECTIONS OVERRULED.