## (February 21, 1963)

█ HUMBLE OIL & REFINING COMPANY, Appellant, v. ERICK TRENCK et al., Respondents.

*Per Curiam.* This is an appeal from a final judgment dismissing plaintiff's complaint after trial. The defendant rested at the close of plaintiff's case.

Plaintiff sought an injunction restraining defendants from soliciting orders from any of plaintiff's customers or customers of plaintiff's predecessor in interest, and sought an accounting and damages.

On September 23, 1947, plaintiff's predecessor, Faultless Fuel Oil Co., Inc. (herein Faultless) and defendant Erick Trenck entered into a written agreement, terminable at will, whereby Trenck agreed to deliver oil for Faultless. The contract could be assigned by either of the parties and it was provided that, at the termination of the contract, Trenck would not solicit the customers of Faultless, nor divulge the names of its customers.

On March 6, 1961, by written agreement Faultless gave plaintiff an option to purchase certain property and property interests owned by it. The document provided that at the closing Faultless would transfer to plaintiff its heating oil accounts and burner service contracts, and " all such business with these [oil] accounts including any and all contracts it may have governing the same." The option given was to expire on April 3, 1961, and it was stated " Consummation of the sale hereunder shall be effected by proper bills of sale, assignments and such other instruments and papers as may be necessary to effect the same by law ". The option if exercised was to constitute the contract of sale and plaintiff, as purchaser, was to be under no obligation to any employee or agents of Faultless.

Plaintiff in its complaint, alleging the facts stated above, asserted it was the assignee of the Trenck contract, that Trenck during its years of business with Faultless had learned the names of its customers, and that Trenck and the other defendants individually and as members of defendant Q. N. S. Fuel Oil Corp. (herein Q. N. S.) had solicited and obtained certain customers of plaintiff and plaintiff's predecessor.

The answer herein, after general denials, except admitting the execution of the 1947 agreement between Trenck and Faultless, pleaded affirmatively that such agreement was terminated November 30, 1960, that such agreement was the result of coercion and that the other individual defendants and Trenck were employees of Faultless without access to any secret lists or files.

At the trial plaintiff produced only one witness, its sales supervisor who, by his own admission, lacked knowledge of certain essential facts. The sales agreement was offered and received in evidence and it was testified the option had been exercised and the entire stock and ownership transferred. The witness did not know of the existence of the Trenck agreement at the time of sale, despite the fact that plaintiff had the right of full access to the books of Faultless, and it was not until September, 1961, that plaintiff learned even of the existence of such agreement, and November 17, 1961, when it obtained from Bernstein, as "president" of Faultless a "*nunc pro tunc*" assignment of the Trenck agreement. No proof was offered that the Trenck agreement was in existence at the time the option sales agreement was entered, or at the time the option was exercised. There was no proof that Bernstein had any authority to execute the assignment of November 17, 1961, since plaintiff had purchased the stock and assets of Faultless many months before. Bernstein was not called as a witness and there was no competent proof that Faultless remained in existence and that Bernstein continued as its president. There was no proof of how long defendant Trenck had serviced the 11 accounts which he admittedly was servicing, no proof to show the other individual defendants did not have a right to, and did not, procure independently the other customers plaintiff allegedly lost, and no proof the other individual defendants even knew of the existence of the 1947 Trenck agreement. No closing statement, bills of sale or assignments were offered. The plaintiff's case rested almost entirely on speculation. Mere speculation of wrongdoing will not substitute for the required proof which was insufficient to warrant granting the drastic relief of injunction.

Accordingly, the judgment appealed from should be affirmed, on the law and the facts, for failure of proof, with costs to the respondents.

McNALLY, J. (dissenting). In an action for an injunction plaintiff appeals from the dismissal of the complaint after trial. Defendants rested at the close of plaintiff's case.

Plaintiff and Faultless Fuel Oil Co., Inc., and its principals, on March 6, 1961 entered into an option agreement for the purchase of properties of Faultless including: "All No. 2 and No. 4 Oil accounts served by Seller [Faultless] at the date of closing. * * * all such business with these accounts including any and all contracts it may have governing the same." The agreement also provided: "Consummation of the sale hereunder shall be effected by proper bills of sale, assignments and such other instruments and papers as may be necessary to effect the same by law". Faultless also agreed to notify its customers of the sale and urge them to do business with the plaintiff. In addition, Faultless agreed to refrain from competing with plaintiff. The president of Faultless agreed to co-operate with and assist plaintiff in retaining said accounts and plaintiff agreed to compensate him therefor. The option agreement expressed the formula by which the purchase price was to be determined as follows: "The purchase price for the sale of all said accounts shall be determined by multiplying the total gallonage of No. 2 and No. 4 Oil sold to Seller's customers for the twelve-month period ending March 31, 1961 by $.055, from which result there shall be deducted 20% thereof and which, as hereinafter provided, shall be paid to Jacob H. Bernstein for his services." The latter was president of Faultless.

On September 23, 1947 Faultless and defendant Trenck entered into an arrangement whereby Trenck, the owner of a truck equipped with a tank of the capacity of 1,920 gallons, agreed to deliver oil for Faultless at the rate of one cent per gallon. Said agreement provided:

"8. At the termination of this contract for any reason whatsoever, the second party [Trenck] hereby agrees not to divulge the customers of the first party [Faultless] to any person or firm nor to make use of same himself and also agrees not to solicit any of the customers of the first party.

"9. This contract may be assigned by either of the parties hereto."

The sale from Faultless to plaintiff in accordance with the option agreement of March 6, 1961 was consummated during May, 1961. This included the acquisition by plaintiff of the outstanding shares of stock of Faultless.

Prior to August, 1961 the individual defendants, including Trenck, organized the corporate defendant Q. N. S. Fuel Oil Corp. Defendants thereafter solicited and sold fuel oil to the accounts to which Trenck had made oil deliveries for and in behalf of Faultless and which accounts had been sold by it to plaintiff.

On this record it is clear that the defendants solicited and sold to said accounts as a result of the knowledge of such accounts acquired by Trenck in the course of his deliveries for Faultless under the 1947 agreement and that the defendants prior to said solicitation and sales had knowledge of the said agreement.

On November 17, 1961 Faultless, at the request of plaintiff, assigned to it the agreement between Faultless and Trenck dated September 13, 1947. Said assignment recites it is made as of May 1, 1961 and includes "any and all rights of action, choses in action, or causes of action and obligations arising from said agreement dated September 13, 1947".

The sale by Faultless to the plaintiff in the circumstances carried with it the good will incident to the oil business of Faultless and its rights under the agreement with Trenck dated September 23, 1947, which was intended to preserve and protect the good will of Faultless against invasion by Trenck. (*Boon* v. *Moss,* 70 N. Y. 465, 473; see 65 A. L. R. 2d 504.) The assignment of November 17, 1961 merely confirmed the legal effect of the sale.

Apart from the agreement the confidential employment of Trenck, insofar as it required disclosure to Trenck of the accounts of Faultless, gave rise to the obligation of Trenck not to exploit such knowledge to the detriment of Faultless. The same obligation is present even if, as argued by defendants, Trenck was an employee of Faultless rather than an independent contractor. (*Witkop & Holmes Co.* v. *Boyce,* 61 Misc. 126, 130, 131, affd. 131 App. Div. 922; *People's Coat, Apron & Towel Supply Co.* v. *Light,* 171 App. Div. 671, 673, affd. 224 N. Y. 727.) Here involved are unadvertised customers of Faultless who became known to Trenck only because they were revealed to him by Faultless to enable him to make oil deliveries. The relation consequent on which Trenck acquired knowledge of the customers of Faultless gave rise to the implied covenant not to use such information to the detriment of Faultless. (*Kleinfeld* v. *Roburn Agencies,* 270 App. Div. 509, 511; see, also, *Bates Chevrolet Corp.* v. *Haven Chevrolet,* 13 A D 2d 27.)

Moreover, the contract of September 23, 1947 includes a covenant on the part of Trenck not to disclose or solicit customers of Faultless. The covenant is valid and enforcible at least to the extent of affording protection against unfair competition. (*Interstate Tea Co.* v. *Alt,* 271 N. Y. 76; *Bates Chevrolet Corp.* v. *Haven Chevrolet, supra.*)

The defendants other than Trenck solicited with knowledge of the 1947 agreement and also should be enjoined. (*Markowitz* v. *Tabakin,* 250 App. Div. 768; *Monroe Coverall Serv.* v. *Bosner,* 283 App. Div. 451; *People's Coat, Apron & Towel Supply Co.* v. *Light, supra; Bates Chevrolet Corp.* v. *Haven Chevrolet, supra.*)

The judgment should be reversed and an injunction granted restraining defendants from soliciting or dealing with customers of the plaintiff formerly

of Faultless to whom deliveries of oil previously were made by defendant Trenck for and in behalf of Faultless.

Botein, P. J., Breitel and Stevens, JJ., concur in *Per Curiam* opinion; McNally, J., dissents in opinion in which Eager, J., concurs.

Judgment affirmed on the law and the facts, for failure of proof, with costs to respondents.