C. E. JENSON, Plaintiff and Appellant, *v.* THEODORE OLSON, Defendant and Respondent.

No. 10657

Submitted April 8, 1964. Decided September 21, 1964.

395 P.2d 465

226

Allen L. McAlear (argued), Bozeman, for appellant.

Paul W. Smith, J. Miller Smith, Chadwick H. Smith (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This action involves a wholesale and retail ice cream operation in Helena, Montana. For several years prior to February 1, 1955, Edward F. Hagler and Theodore E. Olson were partners in the "Dairyland Dairy Store." The partnership was dissolved by written agreement executed on February 1, 1955, with Hagler taking the retail business and Olson taking the wholesale business. Both operations are and have been situated in the same building with two different entrances. Besides the routine severance provisions, the agreement contained a restrictive covenant by which each agreed not to compete with the other for nine years.

Hagler sold out to plaintiff, C. E. Jenson, by a conditional sales contract dated May 28, 1958. The covenant not to compete was not assigned by or mentioned in that contract, although the dissolution agreement with the covenant was placed in escrow with the contract. Complaint was filed by Jenson in November of 1960 against Olson seeking to enjoin Olson from an alleged violation of the covenant and for damages due to an alleged loss of business. The complaint sets forth that in July of 1959 Olson opened a retail counter for ice cream and other dairy products. The defendant's contention is that there had been an oral agreement between him

and Hagler not to abide by the restrictive covenant. Said oral agreement allegedly took place a few months after the written dissolution and was executed by the parties. The stated purpose for this move is contended to be that it was not convenient to run the business separately. Plaintiff complains that the oral agreement was not raised by the answer, but it appears that plaintiff was fully advised thereof when he took the deposition of defendant Olson two months before the trial. Plaintiff introduced this deposition in evidence and, hence, cannot now be heard to complain that he was not apprised of the defense. Stevens v. Woodmen of the World, 105 Mont. 121, 71 P.2d 898.

A covenant not to compete is a restrictive covenant in restraint of trade, and is valid only in certain lines of enterprise and only if it constitutes a reasonable restriction on the freedom to do business. Sections 13-807, 13-808, 13-809, R.C.M. 1947. The covenant between Hagler and Olson was to last for nine years and was to be confined to the City of Helena, and was, therefore, valid as a restrictive covenant not to compete.

The question presented on this appeal is whether Jenson, as purchaser of Hagler's interest, can enforce this covenant against Olson. The trial court held that it could not be so enforced and we agree with that decision. The instant case is one of first impression in Montana.

We have not found any cases which arise from a partnership dissolution with subsequent sale by one of the former partners of his interest. The cases all involve a sale with a restrictive covenant and then a resale by the buyer to a subsequent purchaser. However, if the partnership dissolution is looked upon as a sale°to each other than the instant case is governed by the same rules applicable to sales in series. In other words, Olson sold the retail business to Hagler, who then sold to Jenson.

The general rule governing successive transfers of restrictive covenants is found in 6 Am.Jur.2d, Assignments, § 19, p. 203:

"It is generally held that a covenant by the seller of a business that he will not engage in a similar business, when valid, is assignable by the original purchaser upon a subsequent sale of the business. An express assignment of the covenant to the subsequent purchaser, however, is unnecessary; upon a subsequent sale of the business, such covenant will pass as an incident of the business even though not expressly assigned." (Footnote citations omitted.)

This general rule indicates that the covenant not to compete is assignable, and that it need not be expressly assigned. Also, the covenant need not by its terms run to the "assigns" of the buyer. 24 Am.Jur., Good Will, § 17, p. 813. However, the cases are not clear on what is meant by the part of the rule stating that the covenant need not be "expressly assigned." The question presented by the instant case is whether the covenant, though it need not be expressly assigned, passes to the buyer without any agreement of any kind and without the buyer's knowledge of the existence of such covenant. No Montana cases and very few other cases cast light on what is meant by "no express assignment." The cases that we have been able to find simply state that generally the covenant need not be "specially mentioned" or "expressly assigned" in order for it to pass with a subsequent sale of the business, equipment, and good will. Coker & Bellamy v. Richey, 104 Or. 14, 202 P. 551, 104 Or. 14, 204 P. 945, 947, 22 A.L.R. 744; Sickles v. Lauman, 185 Iowa 37, 169 N.W. 670, 4 A.L.R. 1073; Public Opinion Pub. Co. v. Ransom, 34 S.D. 381, 148 N.W. 838; Palmer v. Toms, 96 Wis. 367, 71 N.W. 654; Burchell v. Capitol City Dairy, Inc., 158 Va. 6, 163 S.E. 81; Bledsoe v. Carpenter, 160 Ark. 349, 254 S.W. 677; Wells v. Powers (Tex. Civ.App.), 354 S.W.2d 651; J. L. Davis, Inc. v. Christopher, 219 Ala. 346, 122 So. 406; Scotton v. Wright, 13 Del.Ch. 214, 117 A. 131; Haugen v. Sundseth, 106 Minn. 129, 118 N.W. 666.

The best summation of what those cases hold is in Public

Opinion Pub. Co. v. Ransom, 34 S.D. 381, 394, 148 N.W. 838, at page 842:

"While it is true that a covenant in restraint of trade will not be inferred from the sale of a business and its good will, and that there must be a distinct covenant agreeing to such restraint, yet it does not follow that, where one has sold his business and good will and entered into such a covenant, it will be necessary for there to be a separate and distinct assignment of such covenant by the covenantee in order for him to transfer the same to one to whom he transfers the business and good will. At the time such covenant is made, it, by the act of the covenantor, passes to the covenantee as and becomes an incident of the good will, and, as, such incident, it passes to any one acquiring such good will."

At first blush it would seem that the rule does not require any oral or written reference to the covenant in order for it to pass with the good will. However, we view the rule as being merely an "enabling" rule, permitting a transfer of the covenant to a subsequent purchaser without an isolated, express assignment. An examination of the several cases summarized by the above rule, shows that there was some understanding or agreement between the covenantee and his purchaser. At the very least, the purchaser had knowledge of the existence of the covenant. Also, it was evident from the evidence presented by the buyer in some cases that the buyer was induced to buy on the basis of the covenant. The courts excused the absence of special and explicit assignment of the covenant and permitted the buyer to take advantage of a covenant which he had shown rightfully to belong to him. The covenant was deemed a part of the good will and passed with a subsequent transfer of the business when it was shown that such covenant was intended to be a part of the deal in the subsequent sale. The transfer of the good will served as the vehicle for the transfer of the covenant.

The burden of proving that there was some under-

standing or agreement between Hagler and Jenson that the covenant was to pass as a part of the good will rests with the plaintiff, Jenson. See: Humble Oil & Refining Co. v. Trenck, 18 A.D.2d 899, 237 N.Y.S.2d 733. Also, in an equity case it is proper for the appellate court to pry into the factual issues of the case and the decision must hinge on factual observations unless the case is returned to the lower court for further proceedings. R.C.M.1947, § 93-216; Platts v. Platts, 134 Mont. 474, 479-480, 334 P.2d 722; Schulz v. Fox, 136 Mont. 152, 157, 345 P.2d 1045.

Plaintiff admitted in his testimony that he did not know of the covenant at the time he purchased the business from Hagler. Olson did not mislead plaintiff or state to him that there was such a covenant when the two discussed the business just before the deal was closed. Also, though the dissolution agreement with the covenant was placed in escrow with the conditional sales contract, the plaintiff could not testify as to any knowledge of the covenant. It was never shown that the dissolution agreement was used in the transaction for any other purpose than to show that Hagler had complete ownership of his original partnership interest.

A study of the course of events leading to the institution of the suit also indicates that Jenson had no knowledge of the covenant until over a year after Olson committed the alleged violation by opening a retail counter. Jenson bought the business in May of 1958 and Olson opened the retail outlet in July of 1959, but it was not until November of 1960 that Jenson instituted this suit or made any formal or informal objection to Olson's activities. Two summers lie between July of 1959 and the institution of the suit in November of 1960, and in the ice cream business it would seem that summers are important sales periods. Yet throughout both of these seasons Jenson failed to complain to either Olson as his competitor or Hagler as his vendor. The failure to assert a timely objection does not perhaps constitute laches as to foreclose the action,

Turek v. Tull, 37 Del.Ch. 190, 139 A.2d 368, but it does lead us to believe that the covenant was not considered a part of the good will transmitted by Hagler to Jenson. Although it was not necessary for the decisions to turn on the fact, two cases suggest that a failure to assert a timely objection warrants an inference that the restrictive covenant was not included in the transfer. Cantrell v. Lemons, 119 Colo. 107, 200 P.2d 911, 912; Wessell v. Havens, 91 Neb. 426, 136 N.W. 70, 72. These two cases indicate that a failure to bring timely objection warrants an inference that the restrictive covenant was not included in the transfer of the business and good will.

It appears that what finally prompted Jenson to institute the suit was the Accord and Satisfaction received by him from Hagler in August of 1960 when he made the final payment. The covenant appears in that instrument, but there is no testimony as to why it was included in written dealings between Hagler and Jenson at such a late date in the transaction. Whether this was the first knowledge Jenson had of the existence of the covenant is not clear, but we do know that Jenson's statements and actions do not indicate he had knowledge of it any earlier.

The decision could be sustained without examining the defense of oral executed agreement not to abide by the covenant because plaintiff has failed to sustain the burden of proof necessary to establish his case. Plaintiff has not shown that the restrictive covenant was still operative when he purchased the business, that he had any knowledge that there was such covenant, nor that it was intended to pass as part of the good will purchased from Hagler.

In any event there could not have been an assignment of the covenant if Hagler did not still have it to assign. Restrictive covenants do not run with the business in the same way that certain covenants are said to "run with the land." Coker & Bellamy v. Richey, supra; Nisonoff v. Cerebe, 1 N.J. Super. 577, 62 A.2d 496. If an oral executed agreement is

shown Olson would be free to rely on it as a defense. Apple v. Edwards, 92 Mont. 524, 16 P.2d 700, 87 A.L.R. 179. However, a question has been raised in this case whether defendant has sufficiently proven the oral agreement. The affirmative evidence offered to substantiate the oral agreement is the defendant's own testimony to that effect. Other evidence offered stems from the witnesses, Weiss and Eisen. These two testified to purchasing ice cream wholesale from Hagler after the dissolution agreement. Neither testified as to any knowledge of an oral agreement between Hagler and Olson. Their testimony serves to prove the oral agreement only by the deduction that because Hagler sold wholesale on those two specific instances there must first have been a covenant and then subsequently some agreement paving the way for Hagler to sell wholesale.

A written contract may be altered or modified by an executed oral agreement as provided by statute. R.C.M. 1947, § 13-907. Also, parol evidence of alteration or modification may be heard. Webber v. Killorn, 66 Mont. 130, 212 P. 852. However, evidence of oral alteration of a written agreement must be clear, convincing, and inconsistent with the written contract to overcome the general rule that a written contract may not be altered by parol or extrinsic evidence. West River Equipment Company v. Holzworth Const. Co., 134 Mont. 582, 335 P.2d 298; Eggers v. General Refrigeration Co., 123 Mont. 205, 210 P.2d 636; Kester v. Nelson, 92 Mont. 69, 10 P.2d 379. It is not necessary here to determine whether or not the proof fully meaures up to this rule, for even if such proof be insufficient as to the defense of oral executed agreement, we cannot absolve the plaintiff for failing to prove his case. Further, other evidence developed by defendant concerning the manner in which Jenson conducted his business does cast doubt on the allegations that business was drawn away by Olson and gives reason to believe that Jenson lost most of his business himself.

The affidavit of Hagler taken by telephone the day after trial and judgment has not been satisfactorily shown to be evidence that has first come to the attention of counsel since the trial or that a diligent effort was made to secure it previous to that time so as to warrant a new trial on the basis of newly-discovered evidence. State v. Estep, 103 Mont. 78, 61 P.2d 830.

We have examined the specifications of error relating to the instructions and find no reversible error.

The judgment below is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, ADAIR and DOYLE, concur.