**Alfred V. PERTHOU, Plaintiff,**

v.

**James M. STEWART, dba Stewart & Associates, Martin J. Anderson, Juanita Benninger, John F. Erwin, Vernon D. Moss and Oscar F. Stallsworth, Jr., Defendants.**

**Civ. No. 64–192.**

United States District Court
D. Oregon.

April 30, 1965.

Leigh D. Stephenson, Koerner, Young, McColloch & Dezendorf, Portland, Or., for plaintiff.

Jack H. Dunn, Maguire, Shields, Morrison, Bailey & Kester, Portland, Or., for defendants James M. Stewart, dba Stewart & Associates, Juanita Benninger and Oscar F. Stallsworth, Jr.

Warde H. Erwin, Portland, Or., for defendants John F. Erwin and Vernon D. Moss.

Monte Bricker, Reiter, Day, Anderson & Wall, Portland, Or., for defendant Martin J. Anderson.

KILKENNY, District Judge.

Originally, plaintiff, the owner of an appraisal business charged the defendants, all former employees, with unfair competition, in four separate counts. Stewart is also plaintiff's former limited partner. Additionally, five of the defendants were individually charged with breaches of written covenants against competition, the defendant Stewart being the thrust of the additional charge that he interfered with the performance of the covenants against competition by the other defendants. The issues presented in the unfair competition counts were resolved against plaintiff at the conclusion of the testimony. Remaining for decision are the questions with reference to breaches of the express covenants against competition and the charge that Stewart enticed plaintiff's employees to leave him.

## BACKGROUND

In 1945, plaintiff and a partner began operating an appraisal business in Seat-tle, under the name of Kelton & Perthou Co. In 1946 the business changed its name to U. S. Appraisal Co. (USAC). Also, in 1946 defendant Stewart was employed by Kelton & Perthou Co. to establish and manage an appraisal and valuation business in Portland. Later, Stewart also supervised the management of an office which was opened in Medford.

In 1948 defendant Benninger was employed by USAC as a stenographer-typist. In the latter part of 1950 she signed an agreement, which purports to be a covenant not to compete with USAC in a business of a similar or like nature for a prescribed period following termination of her employment. About June 30, 1953, defendant terminated her employment with USAC. Several months later she was reemployed by USAC as a stenographer and appraiser and continued in that capacity until February, 1964.

In February, 1950, defendant Anderson was employed by USAC. He also executed an agreement not to compete with USAC after termination of his employment. Anderson's duties eventually consisted of supervision of employees, solicitation of business, and preparation of valuation and appraisal reports. Anderson terminated his employment in March, 1964.

Defendants Erwin and Moss were employed by USAC in 1952 and worked as appraisers until February, 1964. Each of them, in 1953, executed an agreement not to compete with plaintiff for two years after leaving his employment.

In 1953 plaintiff purchased Kelton's interest in the partnership and became the sole owner. The business continued to be operated under the name of USAC. In February, 1959, plaintiff and defendant Stewart formed a limited partnership to conduct an appraisal business in Oregon and northern California under the name of U. S. Appraisal Co., Ltd. and/or U. S. Appraisal Co. of Oregon, Ltd.

Defendant Stallsworth was employed by USAC, Ltd. in 1960 as an appraiser. A week later he also executed a covenant not to compete. He terminated his employment in March, 1964.

On February 3, 1964, after considerable negotiations back and forth between Stewart and the plaintiff, the plaintiff abruptly terminated the partnership and exercised his option to purchase Stewart's interest under the partnership agreement. Plaintiff continued to carry on the partnership business as a sole owner under the name USAC. On February 4, 1964, Stewart commenced doing business in the appraisal field, as sole owner, under the name Stewart & Associates. By March, 1964, defendants Benninger, Anderson, Erwin, Moss and Stallsworth had left the employ of USAC and were employed by Stewart & Associates.

## SPECIFIC ISSUES

A. The validity, in general, of such covenants.

B. Was there a consideration for the covenants?

C. Must such covenants be signed by the covenantee in order to be enforceable?

D. Are such covenants assignable?

E. The validity of the provisions for damages.

F. Was Stewart's conduct actionable?

■ A. Such a contract, when supported by a good consideration, reasonably restricted to time and place; and reasonable in a sense that it is no more restrictive than necessary to protect the covenantee's interest, is valid and enforceable. Eldridge v. Johnston, 195 Or. 379, 245 P.2d 239 (1952). On this issue, I find that the covenants of defendants Benninger, Anderson and Moss are no broader in scope than reasonably necessary to protect the plaintiff's business. They only restrict the named defendants from competing in a similar business for a period of one year in Multnomah County or any other city in which the plaintiff had an office. Certainly, this restriction could not be viewed as unreasonable. Conversely, I find that the covenants executed by Erwin and Stallsworth are excessively restrictive and prohibit competition in a vast area far beyond the requirements of the plaintiff's business. Those covenants foreclose competition throughout the states of Oregon, Washington and California. Although the covenants speak of various geographical areas, I do not believe that those areas are severable. There is no evidence on which the court could fix boundaries. The covenants must stand as drafted and, in my opinion, are unlawful restraints on competition. To be kept in mind is the fact that neither one of these covenants was connected with the sale of an interest in the business by the covenantors. At best, the covenantors must be viewed as employees who were seeking employment at the time of signing the covenants. Of significance on the treatment to be given a covenant signed by the seller of a business, in contrast to one who is a mere employee, is Arthur Murray Dance Studios of Cleveland v. Witter, Ohio Com.Pl., 105 N.E.2d 685, 703–704 (Ohio 1952).

■ B. The admitted facts in the pre-trial order disclose that defendants Benninger, Erwin and Moss signed the covenants some substantial period of time after commencing their respective employments. Since the plaintiff's obligation under the covenants amounted to nothing more than to employ the defendants, something he had already agreed to do, no consideration passed at the time of signing. McCombs v. McClelland, 223 Or. 475, 476, 483, 354 P.2d 311 (1960). Although the language of the documents is employed in a manner to indicate a consideration, a casual analysis thereof clearly demonstrates that the instruments create no additional obligations.

■ There is adequate evidence to support a finding that the defendant Anderson executed the covenant at the time of his employment on February 20, 1950. This covenant is supported by a valuable consideration.

■ The evidence as to when defendant Stallsworth signed the covenant is in a state of confusion. He commenced work on June 1, 1960. The covenant bears the date of June 7, 1960. I am unable to state that the evidence preponderates in favor of plaintiff and, therefore, find for defendant Stallsworth on this covenant on the basis that there was a lack of consideration. Additionally, the covenant required of Stallsworth a payment of $5,000.00 as *liquidated damages*. This amount, when viewed in the light of Stallsworth's rather meager salary, which I shall later emphasize, must be viewed as a penalty, rather than liquidated damages.

■ C. The law does not require that the covenant be signed by the covenantee. Adair v. McAtee, 236 Or. 391, 385 P.2d 621, 388 P.2d 748 (1964); Woodbury v. United States, 192 F.Supp. 924 (D.Or.1961), aff'd, 313 F.2d 291 (9th Cir. 1963).

■ D. Sound authority supports the view that personal service contracts, such as those under examination, cannot be assigned. 3 Williston, Contracts § 412 (3d ed. 1960). This rule applies even though the assignment be to a corporation or partnership with a changed membership which carries on a business substantially in the same way in which it was previously operated. 3 Williston, Contracts § 411A (3d ed. 1960). The fact that a person may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his freedom for the benefit of a stranger to the original undertaking. Smith, Bell & Hauck v. Cullins, 123 Vt. 96, 183 A.2d 528 (1962); Pestel Milk Co. v. Model Dairy Products Co., 52

N.E.2d 651 (Ohio App.1943). That Oregon would follow the same rule is clearly indicated in the decisions of Folquet v. Woodburn Public Schools, 146 Or. 339, 29 P.2d 554 (1934); Harlow v. Oregonian Publishing Co., 53 Or. 272, 100 P. 7 (1909), and American Smelting & Ref. Co. v. Bunker Hill & Sullivan Mining & Concentrating Co., 248 F. 172 (D.Or.1918). Of some importance on the Benninger, Anderson and Stallsworth agreements is the fact that they do not include a covenant which might attempt to bind the successors and assigns of the parties. Additionally, we should keep in mind that there is no evidence of an attempted assignment of any one or more of the agreements. Holden v. Crown Chemical Corp., 19 Conn.Supp. 85, 110 A.2d 288 (1954) and Torrington Creamery v. Davenport, 126 Conn. 515, 12 A.2d 780 (1940), on which plaintiff relies, are distinguishable. The former was an action to enjoin a prior employee from disclosing trade secrets. The latter involved the sale of assets by the owner of a business. The personal services of an employee was not the issue in the case. Coker & Bellamy v. Richey, 104 Or. 14, 202 P. 551, 204 P. 945, 947, 22 A.L.R. 744 (1922), involved the sale of a business and is not in point. The contracts are not assignable under Oregon law.

■ E. The interested defendants claim that the provisions for damages in the covenants are, in fact, penalties and not valid liquidated damage clauses. The covenants executed by Anderson and Benninger fixed a figure of $2,000.00 as liquidated damages, while those executed by Erwin, Moss and Stallsworth fixed a figure of $5,000.00. When viewed in the light of the starting salaries of $250.00 to $375.00 per month, there is no question in my mind but that the $5,000.00 figure is shocking to the conscience and, therefore, constitutes a penalty which invalidates each of said contracts. Secord v. Portland Shopping News, 126 Or. 218, 269 P. 228 (1928);

Alvord v. Banfield, 85 Or. 49, 166 P. 549 (1917); Hull v. Angus, 60 Or. 95, 118 P. 284 (1911). The covenants, except as to Stallsworth, became effective 60 days after the commencement of the employment. Consequently, any one of the employees might have been discharged on the 61st day, thus fixing the amount of the alleged damage. The same figure would be collectible at the end of five, ten or fifteen years service. I have more difficulty with the $2,000.00 figure mentioned in the Anderson and Benninger contracts. The Anderson contract could be terminated on 14 days written notice. His beginning salary was $250.00 per month for the first six months; $275.00 per month for the next six months, with the salary to be negotiated from time to time after the end of the first year. The meagerness of the beginning salary and the fact that the contract might be terminated at any time on 14 days notice, compel a finding that the $2,000.00 figure was a penalty, rather than liquidated damages. Here, we have a figure of approximately ten times the amount of the monthly salary, which provision, if valid, could have been enforced on the expiration, after notice, of 60 days from the date of the contract. Of course, the imposition of such a penalty then, or at any time during the early years of the contract, would be outrageous. It is my duty to make an appraisement of the provision at the effective date of the contract, instead of at the time of the alleged breach or any subsequent time. Secord v. Portland Shopping News, supra. None of the extenuating circumstances favoring the plaintiff in the Secord case, are here present. On the other hand, Perthou gave up nothing in hiring Anderson. Where, as here, the covenant is for a fixed unvarying sum, without significant regard for the date of the breach, and when in the very nature of things the date of the breach is an all-important factor in determining the element of actual damages, the covenant must be held to be one providing for a penalty. Alvord v. Banfield, supra. The Benninger contract cannot be distinguished from that of Anderson. Furthermore, the latter had no consideration. I find that the damage provisions in all of the contracts were, in fact, penalties, designated to coerce the defendants into continuing their employment with plaintiff. Those provisions are unenforceable.

■ F. I previously found, and I repeat, that it was plaintiff's arbitrary conduct, rather than any action on the part of Stewart, which caused the disruption of the plaintiff's business. Likewise, on the same evidence, I find it was plaintiff's conduct, rather than any action on the part of Stewart, which caused plaintiff's employees to sever their connections with him. The loyalty of the employees was to Stewart, rather than to plaintiff or his business. Stewart merely created a demand for their services and they voluntarily came to him. There was no systematic inducing of the employees to leave their employment with the plaintiff, nor to accept employment with Stewart. Nor did he do anything to cripple or destroy a part of the plaintiff's business organization. At most, Stewart created openings in employment which were gladly filled by persons who were loyal to him and had confidence in his business ability.

Findings and conclusions in conformity with my expressions from the bench and those here stated, shall be drafted by counsel for defendants, then served and presented with an appropriate form of judgment.

The Court is indebted to counsel for the excellent briefs submitted. All arguments and cases have received my consideration.