Argued February 10; affirmed March 31, 1942

## PAGE *v.* THOMAS KAY WOOLEN MILL CO.

### (123 P. (2d) 982)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*R. A. Imlay,* of Portland (Dean H. Dickinson, of Portland, on the brief), for appellant.

*Custer E. Ross,* of Salem (Asa L. Lewelling, of Salem, on the brief), for respondent.

LUSK, J. This is a suit for an accounting of a percentage of defendant's profits for the years 1935 and

1936 alleged to be due the plaintiff under the terms of a contract of employment between the plaintiff and the defendant. From a decree in favor of the defendant, plaintiff has appealed.

Plaintiff entered the employ of the defendant as superintendent of its mill at Salem, Oregon, in December, 1926, pursuant to an agreement by which he was to receive a salary of $4,200 per year plus a bonus of 6 per cent of the annual net profits. The terms of this contract are contained in a telegram sent by the late Thomas B. Kay, then president of the defendant company, to the plaintiff at California, Missouri, on November 22, 1926, and reading as follows:

"C A PAGE
"CALIFORNIA MO.
"WILL PAY FORTY TWO HUNDRED WITH SIX PER CENT OF NET PROFITS AND ALLOW TRAVELING EXPENSES BUT SUGGEST SELLING FURNITURE AND BUYING HERE AS MOST SATISFACTORY ARRANGEMENT IF ACCEPTABLE WOULD WANT YOU HERE FEW DAYS BEFORE RAWLEY LEAVES ANSWER OUR EXPENSE.
"THOMAS KAY WOOLEN MILLS CO."

Plaintiff accepted this offer by entering into the employ of the defendant as its superintendent. He continued to serve in that capacity until February 1937, when he left to take another position.

The defendant, while not disputing the terms of the contract, contends that it was modified early in 1934 when the parties agreed that plaintiff should thereafter receive such wage as should be fixed from time to time by the defendant and that thereafter no bonus would be paid to the defendant.

It appears from the record that the plaintiff left a job at California, Missouri, which paid him $5,000 a year, being induced to accept the lower base salary offered by the plaintiff by the additional offer of a bonus. During the eight years 1929 to 1936, both inclusive, the company earned net profits in the years 1929, 1931, 1933, 1935 and 1936. Plaintiff was paid a percentage of these profits pursuant to the terms of his contract for the years 1929, 1931 and 1933, but not for the years 1935 and 1936, which are the only years involved in this suit.

The defense of modification of the terms of the contract depends largely on the testimony of Mr. Ercel W. Kay, who became vice president and general manager of the company on the death of his father, Thomas B. Kay, in 1931. In that year the plaintiff told Mr. Kay that he was entitled to a bonus under a contract and Kay paid him an amount equal to 6 per cent of the net profits of 1931 on February 8, 1932. In 1933, the next year when net profits were earned, Kay considered, according to his testimony, that the plaintiff was not entitled to a bonus because it was not an operating but an inventory profit, and accordingly, having learned that the plaintiff had drawn an order on an automobile company payable out of bonus, Kay asked the plaintiff to show him his contract. Page produced the telegram of November 22, 1926, and Kay had a copy made of it. He testified that he brought the matter to the attention of the board of directors at its meeting on January 16, 1934, and:

"There was a general discussion that took quite a little time. They also took it up with Judge Coshow and Mr. Weatherford also passed his opinion on it, and we discussed this thing during the meeting very fully, and they were opposed, both of them, to paying

this bonus * * * But upon my recommendation they decided to grant it, but they gave me definite instructions—both of them—that I should inform Mr. Page there would be no future bonus."

Judge Coshow and Mr. Weatherford were two of the five directors of the defendant corporation.

Kay further said that his reasons, as stated to the board, for recommending the 1933 bonus payment were twofold: one the reason he mentioned in a letter he wrote to Page, and the other that it would not be fair to Page not to pay the bonus for 1933 as long as he believed he had it coming for that year. The letter to which Kay referred was written December 30, 1936, relative to the plaintiff's demand for payment of a bonus in that year and contains this statement:

"I am somewhat surprised by this, as you were informed, when given a bonus for 1933, that the directors did not consider that you were working under a contract and voted this bonus only on my recommendation and for the reason that you, along with other employees, had taken a severe cut in wages during that year."

The only reference to this matter in the minutes of the meeting of the board of directors referred to is the following:

"The question of a bonus for Mr. Page, our Supt. was fully discussed and decided to pay Mr. Page a bonus of 6% on the net profits for the past year."

Kay testified further that after the directors' meeting he told Page that he had been instructed by the board of directors to inform Page that the bonus for that year had been passed because he, Kay, had recommended it, and there would be no further bonus. He could not recall what Page said in response nor

that Page had made any objections. He was not sure whether the conversation took place at Page's desk or at Kay's car, which was parked outside of the office. He wrote no letter to Page on the subject.

Kay is corroborated to some extent by Roy U. Ohmart, bookkeeper and cashier, and K. H. Pickens, secretary-treasurer of the defendant corporation, both of whom swore that they attended the directors' meeting of January 16.

Ohmart testified on direct examination that a majority of the board expressed the opinion that no future bonus was to be paid and directed Kay so to notify Page, but on cross-examination he admitted he could not say of his own knowledge that any such instructions were given and that at the meeting there was merely a general discussion of the contract which Page claimed he had with the company. Pickens testified that the consensus of opinion of the board was that the 1933 bonus should be paid on Mr. Kay's recommendation, but there were to be no further bonus payments as the board considered that the telegram did not constitute a contract, and that Kay was instructed to inform Page to that effect.

The plaintiff did not dispute Kay's testimony that in January 1934 he asked for the contract, and stated that he wished to take the matter up with the board of directors, but he denied that Kay ever informed him that there would be no further payments of bonus. The bonus for 1933 was paid on April 19, 1934, by two checks—one to Valley Motor Company honoring the order above referred to, and the other a check payable to the plaintiff. In 1935, according to the company's books, a net profit of $3,775.07 was earned. The plaintiff testified that he mentioned to Kay the matter of the bonus for 1935 and that Kay said it was not a

legitimate profit but one based on "depression of the stock", and, as the plaintiff testified, "It wasn't enough to fight over and I didn't say any more about it". Kay conceded that Page might have asked him for a bonus after 1935, and he might have said "nothing doing", but he testified that he did not remember the conversation. In 1936, the net profit, as shown by the company's books, was $24,824.77.

Some time in December 1936 the plaintiff told James L. Edwards, the auditor of the defendant company, that he expected a bonus. Edwards reported this to Kay, who, under date of December 30, 1936, wrote the letter from which we have quoted above.

The plaintiff replied to this letter in writing, denying that he had been informed in 1933 that the directors did not consider that he had a contract and asserting that the bonus was paid without any question at that time. In February the plaintiff left the defendant's employ.

■ We agree with the statement made on the argument by counsel for the defendant that the crucial question is whether Ercel Kay in January 1934 notified the plaintiff that no bonus would be paid him thereafter. If he did so, it needs no citation of authority to support the proposition that plaintiff, by continuing to serve the defendant as its superintendent after such notice, assented to this change in his contract.

It must be conceded that to some extent the evidence on behalf of the defendant is unsatisfactory. The minutes of the directors' meeting failed to record the action taken with respect to future bonus payments and Mr. Kay's recollection of his subsequent conversation with the plaintiff is none too definite as to details. The court, however, could not conclude that the directors did not instruct Kay to inform Page that no bonus

payments would be made in the future without branding the testimony of the witnesses who attended the meeting as a fabrication, and that is not claimed even by counsel for the plaintiff. Having been so instructed, it would be the natural thing for Kay to carry out his instructions.

On the other hand, it is opposed to the probabilities that there should have been no further communication between Page and Kay on the subject after Kay had asked the plaintiff for his contract and had advised Page that he intended to lay the matter before the board of directors. The 1933 bonus, it will be remembered, was not paid until April 19, 1934, three months after the directors' meeting. Page had ample reason for a keen interest in the decision of the directors, and if Kay had not come to him about it the probabilities are that he would have gone to Kay. Instead, he says that neither mentioned the subject thereafter. This may be true, but it is unlikely.

We think, moreover, that the plaintiff's testimony regarding the 1935 bonus weighs heavily against him. He swore, it will be recalled, that when Kay refused to pay the bonus that year he said nothing further about it, that "it wasn't enough to fight over". Six per cent of the 1935 net profit was $226.50, a not insignificant sum. If there was such a conversation it seems more probable that the plaintiff's reason for abandoning his demand, instead of pressing it, was not the one he gave, but the consciousness that he was no longer entitled to a bonus in view of what had occurred in 1934; and inasmuch as his right to a bonus had at that time been called in question it is reasonable to suppose that if he had not then agreed to a change in the terms of his contract he would have made an issue of the matter as soon as it again arose.

██ The case comes down finally to one man's word against another. There are solid arguments either way, though our examination of the record, as we have indicated, leads us to the conclusion that the case for the defendant is stronger than that for the plaintiff. If it were not so and the proofs were evenly balanced, we would not feel justified in rejecting the finding of the circuit judge, who had the opportunity, denied to us, of evaluating the testimony of the witnesses in the light of their demeanor and manner of testifying. *Maidment v. Russell*, 159 Or. 653, 663, 81 P. (2d) 136, 82 P. (2d) 692.

We conclude, therefore, that the decree of the circuit court should be affirmed.