Argued April 7, affirmed May 17, 1972

# MAIL-WELL ENVELOPE COMPANY, *Respondent,* *v.* SALEY ET AL, *Appellants.*

497 P2d 364

*Phil Cass, Jr.,* Eugene, argued the cause for appellants. With him on the briefs were Thomas Mapp, and Miller, Moulton & Andrews, and Riddlesbarger, Pederson, Young & Horn, Eugene.

*R. Alan Wight,* Portland, argued the cause for respondent. With him on the brief were Miller, Anderson, Nash, Yerke and Wiener, Portland.

TONGUE, J.

This is a suit for an injunction to enjoin violation of the noncompetition provisions of an employment agreement. By the terms of that agreement defendant Saley agreed, shortly after becoming an employee of plaintiff's predecessor, that upon the termination of his employment he would not engage in ac-

tivities which would compete with the business of his employer within a specified area for a period of two years. After hearing the evidence the trial court entered such an injunction against defendant Saley, the former employee, and against defendant Pacific Paper & Plastics, Inc., a corporation organized by Saley shortly before leaving his employment.

Defendants appeal. In support of that appeal defendants make contentions which are summarized in the discussion of the following points.

1. *The noncompetition agreement was not invalid for lack of consideration.*

Defendants concede that a noncompetition agreement between an employer and employee may be valid if entered into at the time of the original employment of the employee. Defendants contend, however, that when a noncompetition agreement is not entered into until some time after the employment of the employee, such an agreement, to be enforceable, must be supported by a promise of continued employment, express or implied, or by some other additional consideration, citing *McCombs v. McClelland,* 223 Or 475, 345 P2d 311 (1960), and *Perthou v. Stewart,* 243 F Supp 655 (D Or 1965). Defendants also contend that this noncompetition agreement should not be specifically enforced in equity because any consideration was "grossly inadequate" and because it was induced by "sharp practice," citing 2 Restatement, Contracts 665, § 367 (1932).

Plaintiff does not disagree with these propositions of law, but contends that they are not supported by the evidence and that there was substantial new and additional consideration to support this employment agreement, including its noncompetition provisions.

The trial court also found that the agreement was supported by a valuable consideration consisting of mutual promises which proved to be of "extreme value" to the defendant Saley and that, in any event, it was not for the court "to weigh the wisdom of the contract or to say how much consideration was wise for the defendant to accept."

■ In our view, in order for a noncompetition agreement to be specifically enforceable in equity nominal consideration is not sufficient and the consideration for such an agreement must not be "grossly inadequate" or its terms otherwise unfair. 2 Restatement, Contracts, *supra*. Upon examination of the evidence, however, we find that there was substantial new and additional consideration, which was not "grossly inadequate;" that its terms were not otherwise unfair and that it was not "induced by sharp practice."

Defendant Saley was employed by plaintiff's predecessor as a prospective salesman on October 1, 1958. At that time he did not sign a noncompetition agreement and was not informed that he would be expected to sign such an agreement. He was then given a training course for three months, during which he was paid at a salary of $500 per month. On January 2, 1959, he undertook the duties of a salesman in the Eugene area. On or about that date the contract of employment was signed, including the noncompetition provisions.

The contract also provided for the employment of Saley as a salesman on a commission basis, with a guaranty of $1,650 per quarter, or $550 per month. Plaintiff's executive vice president, Mr. Darby, testified that it was the policy of the company to have all

salesmen sign such agreements, including the noncompetition provisions, and that otherwise they would not be allowed to become salesmen. He also testified that although he did not specifically tell that to Saley, he had previously mentioned the contract to Saley and discussed the terms with him at the time it was signed and that it was also read by him at that time. In addition, he testified that this was before Saley undertook his new duties as a salesman in Eugene, on a commission basis.

Defendant Saley testified that Mr. Darby came into the office on that day, discussed other things with him, and then said "Oh, by the way, here is something we forgot to have you sign" and that "All of our employees sign this agreement." Defendant also contends that the contract was one of adhesion and that Saley wanted to have an attorney look at it, but felt that he had no choice but to sign it. On trial, however, Saley did not directly testify to that effect.

It appears from the record that under the terms of contract for sales on a commission basis defendant Saley was able to increase his earnings from $9,836.28 in 1959 to a total of $25,113 in 1969, the year prior to his termination.

■■ Aside from other provisions of the agreement which may be considered as constituting legal consideration to Saley (such as its provision for termination by either party on 15 days' notice), we are of the opinion that the provisions under which Saley was promised an increase from $500 to $550 per month, plus the payment of commissions by which he was able to so substantially increase his earnings, constituted substantial new and additional consideration so as to make the contract not only legally valid, but one en-

titled to enforcement in equity by specific performance. We are also of the opinion that the provisions of the contract were not unfair, under the circumstances, and that the evidence is insufficient to sustain defendants' contention that it was induced by "sharp practice."

2. *The employment agreement was not terminated by the reorganization of the employer corporation, under which the contract was assigned to a new corporation.*

■ Defendants contend that the employment agreement with the original Mail-Well Envelope Company, including its noncompetition provisions, was a personal service contract, and, as such, could not be assigned by that corporation through Pak-Well Paper Industries, Inc. (a corporation which resulted from a merger of Mail-Well and other corporations) to a new Oregon corporation, Mail-Well Envelope Company, without the consent of defendant Saley. In support of that contention defendants cite *Folquet v. Woodburn Schools,* 146 Or 339, 345, 29 P2d 554 (1934); *Perthou v. Stewart, supra; Smith, Bell & Hauck, Inc. v. Cullins,* 123 Vt 96, 183 A2d 528 (1962); and *Paige v. Faure,* 229 NY 114, 127 NE 898 (1920).

The employment agreement in this case, however, provided that "the provisions of this contract shall extend to the successors, and assigns of the Employer * * *." According to 3 Williston, Contracts 141, § 423 (3d ed):

"Rights which would not otherwise be capable of assignment because too personal in their character and duties, the performance of which for a similar reason could not be delegated, *may be assigned* or delegated *if the contract so provides,* or if in the

absence of such a provision the other party consents." (Emphasis added)

To the same effect, see 1 Restatement, Contracts 203, § 162.

The employment agreements in *Folquet v. Woodburn Schools, supra; Perthou v. Stewart, supra;* and *Smith, Bell & Hauck, Inc., supra,* as cited by defendants, did not include provisions for assignment. (See also reference to *Smith* in *Abalene Pest Control Service, Inc. v. Hall,* 126 Vt 1, 220 A2d 717, 721 (1966).)

On the other hand, according to 4 Corbin, Contracts 558, § 885 (1951), noncompetition provisions in employment contracts which are otherwise valid are assignable even in the absence of provisions permitting the assignment of such contracts. This apparently is also the view of the courts of New York in cases decided since *Paige v. Faure, supra,* as cited by defendants. (See *Norman Ellis Corp. v. Lippus,* 13 Misc 2d 432, 176 NYS2d 5 (Sup Ct 1955), and *Abalene Pest Control Service, Inc. v. Powell,* 13 Misc 2d 661, 176 NYS2d 6 (Sup Ct 1958), *aff'd* 187 NYS2d 381 (Sup Ct App Div 1959).)

Regardless of whether the proper rule should be as stated by Williston or by Corbin, the employment contract in this case included a provision permitting assignment and was thus assignable under either version of that rule.

■ Defendants contend that because the contract might not have been assignable by Saley, as the employee, it could not be assigned by Mail-Well, as the employer. Defendants cite no supporting authority. There is no reason why, under ordinary circumstances,

the parties to a contract cannot agree that only one party may assign its rights under the contract.

3. *The employment agreement was not revoked by implication by the change of Saley's position to district sales manager.*

Defendants point out that the employment agreement refers specifically to the desire of the employer to employee Saley "to solicit and sell for it" and provided for compensation solely on a commission basis. In 1964 Saley was promoted to district sales manager, with the duty of supervising other salesmen, although retaining his duties as a salesman in about one-half of his former territory. He was then paid a salary of $15,000 per year, plus commissions on sales at the same rates as previously.

Defendants contend that this was a "new agreement" which, by implication, revoked the previous written employment agreement, citing *F. A. Bartlett Tree Expert Co. v. Barrington,* 353 Mass 585, 233 NE2d 756 (1968). It is also contended that "if an employee accepts a different form of compensation for the same, or substantially the same services called for by the basic contract, modification may be presumed," citing *Page v. Kay Woolen Mill Co.,* 168 Or 434, 123 P2d 982 (1942).

The question to be decided is whether the change in the duties of Saley resulted in a revocation of the previous employment agreement or in a modification of that agreement which had the effect of amending, rather than revoking it.

The parties to a contract may subsequently modify a previous contract by changing or adding to its

terms without superseding the old contract or destroying its obligations, except insofar as the new terms are inconsistent with the terms of the old contract. See *Mathis v. Thunderbird Village, Inc.*, 236 Or 425, 438, 389 P2d 343 (1964), and *Florey et al v. Meeker et al*, 194 Or 257, 282, 240 P2d 1177 (1952). This rule also applies to the modification of a written agreement by a subsequent oral agreement, assuming that there is consideration for such an agreement. *Krause v. Bell Potato Chip Co.*, 149 Or 388, 392, 39 P2d 363 (1935). In addition, assent by an employee to the modification of an agreement of employment by a change in duties by his employer may be shown by his continuing to serve after notice of such a change. *Page v. Kay Woolen Mill Co., supra* at 439.

■ Defendants concede that whether there has been such a modification of a previous agreement, rather than an implied revocation or termination of the agreement as the result of such a subsequent change, depends upon the intention of the parties. The original employment agreement provided that Saley's duties as a sales representative might be "changed by the employer at will." Defendant Saley continued as a sales representative, without objection, even after he assumed some supervisory duties. He also accepted the benefit of substantially increased annual earnings following this change in his duties. The trial judge, in his oral opinion, stated: "I find that there was no implied termination." After examining the record, we agree.[1]

---

[1] In F. A. Bartlett Tree Expert Co. v. Barrington, 353 Mass 585, 233 NE2d 756 (1968), cited by defendants, the employer, after suggesting a change in duties and compensation, offered the employee an entirely new written contract, which the employee declined to sign and rejected.

4. *The noncompetition provisions of the employment agreement are not unlawful as "conspiracy or collusion" to lessen free competition in the bidding on public contracts.*

ORS 279.032 (1) provides:

"It shall be unlawful for any person bidding upon or entering into a public contract, * * * to enter into any conspiracy or collusion with any person which tends to or does lessen or destroy free competition in the letting of such contract, * * * provided that any one or more of such persons shall have done any act to effect the object of the conspiracy or collusion."

■ Defendants contend that the noncompetition provisions of this employment agreement violate that statute because defendants make sales to state agencies and would improperly prohibit defendants from making such sales as a competitor of plaintiff.[2] We have read the cases cited by defendants in support of that contention, and find that they are not in point.[3] Furthermore, there was no evidence in this case that when his employment contract was made Saley had any interest or intention of bidding or entering into any public contract.

It may be that, depending upon the facts, a noncompetition provision in an employment agreement might conceivably constitute or be evidence of an unlawful "conspiracy or collusion" in violation of the

---

[2] Defendants also refer to the Oregon Constitution, Art IX, § 8, providing that all stationery required for use of the State shall be furnished by the lowest responsible bidder.

[3] Newport Construction Co. v. Porter, 118 Or 127, 246 P 211 (1926); Terwilliger Land Co. v. City of Portland, 62 Or 101, 123 P 57 (1912); Turney v. J. H. Tillman Co., 112 Or 122, 228 P 933 (1924); and Uhlmann v. Kin Daw, 97 Or 681, 193 P 435 (1920).

intended meaning of ORS 279.032. We are of the opinion, however, that this is not such a case.

5. *The noncompetition provisions of the employment agreement do not constitute an unreasonable restraint of trade.*

Defendants contend that noncompetition provisions in an employment agreement is a contract in restraint of trade and, as such is presumptively unreasonable and illegal (citing *Eldridge et al v. Johnston,* 195 Or 379, 403, 245 P2d 239 (1952)), and that this "noncompetition covenant" is an unreasonable restraint of trade because: (1) it is not required for the protection of economic interests of plaintiff; (2) its purpose and effect is to strengthen plaintiff's "monopolistic's position" in the market; and (3) it imposes an unreasonable hardship upon defendants.

We did not hold in *Eldridge et al v. Johnston, supra,* that noncompetition provisions in employment agreements are presumptively unreasonable and illegal. Instead, we not only enforced such a provision in that case, but in doing so held as follows, at 403:

"It is elementary that contracts in general restraint of trade are void and unenforceable. But it is equally well settled that contracts in partial restraint of trade may be enforceable. [Citations omitted]

"Three things are essential to the validity of a contract in restraint of trade: (1) it must be partial or restricted in its operation in respect either to time or place; (2) it must be on some good consideration; and (3) it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made and must not be so large in its operation as to interfere

with the interests of the public. [Citations omitted]"

See also *Kelite Prod., Inc. v. Brandt et al,* 206 Or 636, 652-656, 294 P2d 320 (1956); Annot., 41 ALR2d 15, 99-101 (1955); and Blake, "Employment Agreements Not to Compete," 73 Harv L Rev 625 (1960). Defendants do not contend that the noncompetition provisions of this employment agreement were unreasonable in respect to either time (two years) or place (parts of Oregon). In addition, the agreement was one based upon good consideration, for reasons previously stated.

■ After considering the entire record, we also hold that the noncompetition provisions of this employment agreement were reasonable in that they afforded fair protection to legitimate interests of the plaintiff and were not so "large" in their operation as to unreasonably interfere with the interests of the public. See *Eldridge et al v. Johnston, supra; Kelite Prod., Inc. v. Brandt et al, supra;* and *McCallum v. Asbury,* 238 Or 257, 393 P2d 774 (1964), among other cases. In so holding, we have not overlooked defendants' contention that enforcement of the agreement would "strengthen plaintiff's monopolistic position in the business envelope market in Oregon." After considering the entire record, however, we find, as did the trial court, that the evidence fails to prove that contention.

■ We have also considered defendants' contention that enforcement of the agreement imposes an unreasonable hardship upon them. The record is clear, however, that defendant Saley voluntarily terminated the employment agreement and did so after previously seeking legal advice as to the possible consequences of

that conduct and after also previously incorporating Pacific Paper & Plastics, Inc. as a potential competitor of his former employer. Under these circumstances we agree with the holding of the trial judge that "the hardship created here is one of defendants' own making."

For all of these reasons, the judgment and decree of the trial court is affirmed.