The **OLSTEN CORPORATION, Plaintiff,**

v.

Carol **SOMMERS and Susan Mesher, Defendants.**

**Civ. No. 82–32 FR.**

United States District Court, D. Oregon.

Feb. 26, 1982.

William C. Campbell, Lindsay, Hart, Neil & Weigler, Portland, Or., for plaintiff.

Frank E. Day, Michael S. Sommers, Day & Prohaska, P. C., Portland, Or., for defendant Sommers.

Thomas S. Moore, Portland, Or., for defendant Mesher.

## OPINION AND ORDER

FRYE, District Judge:

This matter came before the court upon the plaintiff's complaint seeking to enforce a non-competition covenant in an employment agreement. The plaintiff appeared by and through its attorney William C. Campbell, the defendant Carol Sommers appeared by and through her attorney Frank E. Day, and the defendant Susan Mesher appeared by and through her attorney Thomas Moore. The court heard the testimony on February 19, 1982, and took the matter under advisement.

Jurisdiction is based on diversity of citizenship. Oregon law governing non-competition covenants is controlling.

The Olsten Corporation is in the business of supplying temporary employees to businesses. Carol Sommers began working as the Portland branch manager for Olsten Corporation on April 17, 1978. Susan Mesher began working as a sales representative for Olsten Corporation on February 6, 1979. Both defendants signed employment agreements containing a non-competition covenant. The covenant provided that for a period of six months after termination from Olsten the employee would not be connected in any way with the operation of any business similar to Olsten Corporation within 30 miles of the last Olsten office where the employee was employed.

Both defendants terminated their employment with Olsten in September, 1981. They set up their own temporary employment service, AAAA Temporary Services,

Inc., which began operating on December 1, 1981. Plaintiff seeks damages and an injunction against defendants' continued operation of AAAA Temporary Services, Inc.

## APPLICABLE LAW

■ ORS 653.295 provides that a non-competition agreement in an employment contract is void and unenforceable, "unless the agreement is entered into upon the initial employment of the employee with the employer." Furthermore, if the non-competition agreement is valid under ORS 653.295, it must meet three other requirements:

1. It must be partial or restricted in its operation in respect to time or place;

2. It must be supported by consideration; and

3. It must be reasonable, meaning that, "it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public." *North Pacific Lumber Company v. Moore*, 275 Or. 359, 364, 551 P.2d 431 (1976). Defendants do not contend that the non-competition agreements violate requirements 1. and 2.

■ Customer contacts constitute a legitimate interest of the employer entitled to protection by a non-competition covenant. *Id.* Where the employment brings the employee into personal contact with customers, or enables him to acquire valuable information about the nature of the business and the requirements of the customers, which information enables him by engaging in a competing business in his own behalf to take advantage of such knowledge or acquaintance with the customers of his former employer, and thereby gain an advantage, a non-competition covenant will be enforced. *Id.* at 364–365, 551 P.2d 431.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

It is stipulated that defendant Mesher signed the non-competition covenant on her first day of work for Olsten. The date upon which defendant Sommers signed the non-competition covenant is in dispute.

Defendant Sommers' employment contract, which contains the non-competition covenant is undated. The evidence shows, however, that it is the routine practice of the Olsten Corporation to send the employment agreement to the employee in a packet that also contains a W–4 form and insurance forms. It is stipulated that these materials were mailed to Sommers on March 29, 1978, and that she received them on April 4, 1978. The W–4 form was signed and dated April 5, 1978. Exhibit 7 is a letter written by defendant Sommers, dated April 5, 1978, saying that she has completed and signed all the forms sent to her the previous week, except the insurance form. Based upon this evidence, the court finds that defendant Sommers signed the non-competition agreement on April 5, 1978.

Defendants argue, however, that they did not enter into the non-competition agreement upon "initial employment," because they orally accepted employment with Olsten sometime before signing the employment contract. The evidence is undisputed that defendant Mesher orally accepted employment with Olsten sometime during the week prior to February 6, 1979, and that defendant Sommers orally accepted employment with Olsten near the end of March, 1978. The question is, what is the meaning of the term, "initial employment" in ORS 653.295. Is it when the employee accepts a job offer, or signs an employment contract, or begins work?

■ Before ORS 653.295 was passed, Oregon case law held that a non-competition agreement was supported by good consideration only if it was entered into upon initial employment or supported by some new consideration if entered into later on during the period of employment. *Mail-Well Envelope Company v. Saley*, 262 Or. 143, 146, 497 P.2d 364 (1972); *McCombs v. McClelland*, 223 Or. 475, 354 P.2d 311 (1960). The Oregon Supreme Court has held that a contract is deemed to be entered into upon initial employment when it is executed

three days after the employee starts work. *Bouska v. Wright,* 49 Or.App. 763, 621 P.2d 69 (1980).[1] These cases defining when an agreement is entered into upon initial employment are still good law. The court finds that "initial employment" in ORS 653.295 means when the employee starts work.

The next issue to address is the "protectable interest" issue. Both defendants argue that their customer contacts were not sufficient to create a protectable interest on the part of Olsten. They stress that a majority of their sales time was spent contacting new customers rather than reinforcing relationships with existing customers. They argue that existing customers' most significant contacts with Olsten were with the "inside" persons who took their orders for temporary employees.

The evidence indicates that both defendants did spend at least part of their time contacting existing customers. The personnel evaluations prepared during the defendants' employment with Olsten indicate the significance of their personal contacts with customers. (Exs. 16 and 27). Sommers also testified that she had formed personal relationships to the extent that she was on a first-name basis with and felt comfortable asking to get together socially after work with the person responsible for hiring temporary employees at several of Olsten's customers. She stated that these contacts were important. As a result of these relationships, the customers were more likely to come to Sommers initially. Defendant Mesher also admitted that contacts with customers who have used plaintiff's services are important.[1] Moreover, in their customer contacts, both defendants acquired valuable information about the needs of the customers which was used in completing a "customer profile."

■ The most significant evidence is the effect these customer contacts had on the defendants' business when they started operating AAAA Temporary Services, Inc.

The evidence shows that 14 of AAAA's 27 customers were former clients of Olsten. Defendant Sommers identified five customers with whom she had developed a personal relationship and who transferred business to AAAA. Defendant Mesher identified five customers of AAAA that were formerly her accounts at Olsten. The court finds that defendants' customer contacts gave Olsten a legitimate interest entitled to protection by a non-competition agreement.

Defendants argued in their trial briefs that their employment contracts are void because Olsten made misrepresentations of material fact. They contend that Olsten promised to introduce them to unique methods of operation and to provide them special training.

■ Defendant Mesher did not produce any evidence of misrepresentation at trial. Defendant Sommers testified that she was promised special training in unique methods of operation used by Olsten and that she never received such training. There was evidence, however, that she did receive training during her first week of employment with Olsten, and attended regional meetings which she found beneficial. (Ex. 16). There was no evidence that Olsten made any promises with the intent not to perform, which is necessary to support a defense of fraud. *See Burgdorfer v. Thielemann,* 153 Or. 354, 55 P.2d 1122 (1936).

It is stipulated that when defendant Sommers received her first raise in December, 1978, she signed a "confidential materials agreement," which contained an agreement not to disclose confidential information acquired during employment with Olsten, and a non-competition agreement that was broader in scope than the covenant contained in her initial employment contract. It is also stipulated that when Sommers received raises on three other occasions, she was given a "confidential materials agreement," but did not sign it. She argues that Olsten's failure to terminate her when she

---

1. In the *Bouska* case, the agreement was entered into prior to the effective date of ORS 653.295.

did not return the signed confidential materials agreement constituted agreement to cancel the non-competition covenant in the original employment contract. Defendant Mesher joins in this argument.

 Testimony on the confidential materials agreements was excluded at trial on the grounds that the agreements are irrelevant. The non-competition covenant in the first confidential materials agreement is void under ORS 653.295, and therefore has no effect. The subsequent confidential materials agreements were proposed modifications of the employment contract that were not accepted and have no effect on the original contract.

## ULTIMATE FINDING OF FACT AND CONCLUSION OF LAW

 Both defendants have breached valid, enforceable non-competition covenants in their employment contracts.

## REMEDY

Plaintiff seeks an injunction to enforce the non-competition agreement. The agreement provides that the six month period shall be tolled during a violation. There is a dispute, however, over when the violation began. The court finds that it began when the defendants began operating their business on December 1, 1981.

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant Sommers is enjoined from the date of this order until midnight June 13, 1982, and defendant Mesher is enjoined until midnight June 21, 1982, from directly or indirectly owning, managing, operating, controlling, being employed by, participating in, or being connected in any manner with the ownership, management, operation, or control of any business that provides temporary employees to customers, and from diverting, influencing, or attempting to divert or influence any customer or employee of Olsten, within a 30 mile radius of the Olsten office at 421 SW Sixth Avenue, Portland, Oregon.

In accordance with the court's ruling at trial, IT IS HEREBY ORDERED that the plaintiff submit within 15 days of the date of this order a memorandum and supporting documents showing what amount of damages the plaintiff is entitled to recover. Defendants may respond within ten days of receipt of the plaintiff's memorandum. A hearing on the issue of damages will be scheduled upon the request of any party.